IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CONTINENTIAL TRANSPORT CORPORATION,<br><br>     Plaintiff,<br> v.<br><br>ENGINEERING REMEDIATION RESOURCES GROUP, INC.,<br><br>     Defendant. | CIVIL NO. 19-00115 JAO-KJM<br><br>ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO SECTION 1404(a), OR IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT |

**ORDER DENYING DEFENDANT'S MOTION TO TRANSFER
VENUE PURSUANT TO SECTION 1404(a), OR IN THE
ALTERNATIVE, TO DISMISS THE COMPLAINT**

This action involves a dispute between a contractor and subcontractor for a public works project in American Samoa. The subcontractor, Plaintiff Continental Transport Corporation, asserts breach of contract, fraudulent misrepresentation, negligent misrepresentation, and *quantum meruit* claims against Defendant Engineering Remediation Resources Group, Inc. Defendant moves to transfer the case to the Northern District of California, or in the alternative, to dismiss the misrepresentation counts (Counts II and III) of the Complaint.

For the reasons stated below, the Motion is DENIED.

# I. BACKGROUND

## A. Facts

### i. Facts as Alleged in the Complaint

The American Samoa Power Authority (the "Power Authority") hired Defendant to construct the New Wells Nos. 1, 2, and 3 Water System Connection Project (the "Project") in Malaeimi Valley, American Samoa. Compl. ¶ 1. Defendant entered into a Construction Services Agreement (the "Prime Contract") with the Power Authority on July 13, 2016. *Id.* ¶ 1. Defendant hired Plaintiff to "execute all phases of field work" for the Project, and the parties executed a Subcontract on July 8, 2016. *Id.* ¶¶ 1–2. Plaintiff bid on the Project without seeing final design plans, basing its bid on Defendant's representations regarding the Project. *Id.* ¶ 3. Defendant provided final design plans after bid closing, and Plaintiff realized that the work required for the Subcontract exceeded its bid. *Id.* Plaintiff began construction anyway, allegedly because Defendant assured Plaintiff that the Power Authority would approve a change order to fund the additional work. *Id.*

Time passed without a change order and Plaintiff stopped work in November 2017. *Id.* ¶ 4. On February 23, 2018, Defendant and the Power Authority reached an agreement, and Plaintiff, Defendant, and the Power Authority executed agreements on March 13, 2018 (the "Letter Agreement") and on May 8, 2018 (the

"Payment Agreement"). *Id.* ¶ 6. Plaintiff alleges that it completed all work under the Subcontract and Payment Agreement, but that it is still due money because Defendant failed to pay or authorize the Power Authority to pay. *Id.* ¶¶ 43–51. Plaintiff also claims that Defendant made misrepresentations that induced Plaintiff to enter into the Subcontract, begin work, and later enter into the Payment Agreement. *Id.* ¶¶ 52–67.

### ii. The Agreements

The Prime Contract, Subcontract, and Payment Agreement contain governing law provisions. The Prime Contract states:

> 15. Governing Law. The validity of this Contract and any of its terms or provisions, as well as the rights and duties of the parties to this Contract, shall be governed by the laws of the Territory of American Samoa. The Venue for any action at law or in equity to enforce or interpret the provisions of this Contract shall be the US Federal Court in Honolulu, Hawaii.
>
> . . .
>
> 49. Applicable Law: Jurisdiction. This Agreement shall be construed according to the laws of the State of Hawaii. The Venue for any action at law or in equity to enforce or interpret the provisions of this Contract shall be the US Federal Court in Honolulu, Hawaii. Should either Party to this Agreement bring legal action against the other, the case shall be handled by the US Federal Court in Honolulu, Hawaii, and the Party prevailing in such action shall be entitled to reasonable attorney's fees which shall be fixed by the judge hearing the case, and such fees shall be included in the judgment, together with all costs.

ECF No. 26-5 ¶¶ 15, 49.

3

The Subcontract indicates:

> **4.12 Governing Law**
>
> Except for disputes related to this AGREEMENT that are subject to dispute resolution under the PRIME CONTRACT, which shall be governed by the governing laws of the PRIME CONTRACT, this AGREEMENT shall be governed by the laws of the state of California without giving effect to the principles thereof relating to conflicts of law.
>
> . . .
>
> **5.1 Dispute Resolution**
>
> 5.1.1 [Plaintiff] and [Defendant] shall attempt to resolve any disputes by good faith negotiation. In the event they cannot reach a negotiated agreement, the dispute resolution process shall be litigation in any court of appropriate jurisdiction. [Plaintiff] agrees that in the event [the Power Authority] and [Defendant] become engaged in a dispute resolution process under procedures required by the PRIME CONTRACT, [Defendant] may, in its sole discretion, join the [Plaintiff] in the PRIME CONTRACT dispute resolution proceeding, if [Defendant] alleges that the matter being addressed in said proceeding involves work that is the subject of this Subcontract. In the event it is joined in a dispute resolution process under the PRIME CONTRACT, [Plaintiff] agrees to be bound by all terms of the PRIME CONTRACT dispute resolution process and any resulting ruling, order, award, or judgment.

ECF No. 16-3 ¶¶ 4.12, 5.1.1.

Finally, the Payment Agreement states:

> **WHEREAS** [Defendant] wishes for [the Power Authority] to pay [Plaintiff] directly from the Construction Proceeds in order to satisfy [Defendant's] payment obligation to [Plaintiff] under the Subcontract Agreement.

> **WHEREAS** the Parties executed a letter agreement, dated March 13, 2018 (the "Letter Agreement"), that included, among other things, the Parties' express agreement that [the Power Authority] would pay [Plaintiff] directly for future services on the [Power Authority] Project.
>
> . . .
>
> **4.7 Venue.** This agreement shall be governed by the laws of American Samoa, and any disputes arising out of this agreement shall be heard in the U.S. Federal Court in Honolulu, Hawaii.

ECF No. 26-6 at 1, ¶ 4.7.

**B.     Procedural History**

Plaintiff initiated this action on March 5, 2019, asserting breach of contract (Count I), fraudulent misrepresentation (Count II), negligent misrepresentation (Count III), and *quantum meruit* (Count IV) claims.  ECF No. 1.  Plaintiff prays for liquated, compensatory, consequential, and punitive damages; attorneys' fees; and any other relief deemed appropriate.  *Id*. at 24.

On April 24, 2019, Defendant filed the instant Motion to Transfer Venue Pursuant to Section 1404(a), or in the alternative, to Dismiss the Complaint.  ECF No. 16.  Plaintiff filed an opposition, ECF No. 26, and Defendant responded with a reply, ECF No. 27.  The Court asked for supplemental briefing to address questions regarding choice of law.  ECF No. 28.  Defendant responded to the Court's inquiry, ECF No. 30, and Plaintiff replied, ECF No. 31.

5

## II. LEGAL ANALYSIS

### A. Section 1404(a) Legal Standard

Defendant brings the Motion pursuant to 28 U.S.C. § 1404 and Federal Rule of Civil Procedure ("FRCP") 12(b)(6). Section 1404(a) states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a). Courts in the Ninth Circuit consider the following factors when addressing a motion to transfer venue:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

When a contract contains a mandatory forum selection clause, the analysis shifts:

> (1) the party defying the forum-selection clause bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted, (2) the Court may only consider public interests and should not consider arguments about the parties' private interests, and (3) a federal court sitting in diversity must follow the choice of law rules of the state specified in the forum-selection clause.

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 64–65 (2013). Although the presence of a forum-selection clause is "not dispositive," *id*. at fn. 20 (internal citations omitted), it should "be given controlling weight in all but the most exceptional cases," *id.* at 60 (internal quotation omitted).

**B.     Rule 12(b)(6) Legal Standard**

Federal Rule of Civil Procedure ("FRCP") 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a court must accept all allegations contained in the complaint as true, this obligation does not extend to legal conclusions. *Id.* As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P.

8(a)(2)) (some alterations in original). If dismissal is ordered, a plaintiff should be granted leave to amend unless it is clear that amendment would be futile. *Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To state a claim for fraud, Plaintiff's Complaint must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013). FCRP 9(b) applies to federal and state law claims sounding in fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).

**C. Discussion**

Defendant moves to transfer the case to the Northern District of California. Alternatively, Defendant argues that the case should be dismissed because (1) Plaintiff's misrepresentation claims fail to meet the pleading requirements of FCRP 9 and (2) the economic loss rule bars Plaintiff's fraud and negligent misrepresentation claims.

### iii. Motion to Transfer

Defendant argues that the Subcontract does not specify a forum and the *Jones* factors weigh in favor of transferring the case to the Northern District of

California. Defendant's argument fails because (1) the forum-selection clause in the Payment Agreement, which specifies the District of Hawaii as the parties' chosen forum, governs some of Plaintiff's claims, (2) the *Jones* factors weigh in favor of allowing the claims arising under the Subcontract to remain in the District of Hawaii.

### 1. Claims Arising under the Payment Agreement

Plaintiff, Defendant, and the Power Authority entered into the Payment Agreement on May 8, 2018 to address additional payments to Plaintiff. Compl. ¶ 6. The Payment Agreement contains a forum-selection clause, which states, "This agreement shall be governed by the laws of American Samoa, and any disputes arising out of this agreement shall be heard in the U.S. Federal Court in Honolulu, Hawaii." ECF No. 26-6 ¶ 4.7.

The following allegations in the Complaint clearly state plausible claims under the Payment Agreement:

> 34. Between April 2018 and July 2018, [Plaintiff] continued to make consistent good faith efforts to perform the remaining work under the parties' agreements and provided all requested documentation supporting the additional work required for the retaining walls and tank foundations. [Defendant], however, continued to delay with respect to (1) negotiating an additional change order for the tank foundations, and (2) approving invoices to secure payment to [Plaintiff] by the Power Authority.
>
> 35. Notwithstanding [Defendant's] delays and failure to authorize compensation, [Plaintiff] completed the "Pay Items"

identified in the Payment Agreement, with the exception of (1) installation of a non-compliant bacteriological station provided by [Defendant], (2) final gravel installation at tank one, which was delayed because [Defendant] failed to complete the fence installation first, and (3) completing the concrete pour at the end of the road.

. . .

46. [Defendant] materially breached the Subcontract *and Payment Agreement* by failing and refusing to negotiate the necessary change order in good faith.

47. [Defendant] further materially breached the Subcontract *and Payment Agreement* by failing to authorize the Power Authority to pay the Construction Proceeds owed to [Plaintiff].

. . .

55. [Defendant's] principals made the false promises and material misrepresentations to induce [Plaintiff] into entering into the Subcontract and Payment Agreement and to incur significant expense to build the retaining walls and tank foundations at the Project.

. . .

69. [Defendant's] principals knew or should have known these promises and representations to be false, and that they would induce [Plaintiff] to enter into the Subcontract and Payment Agreement and to incur significant expense to build the retaining walls and tank foundations at the Project.

. . .

74. [Plaintiff] has been substantially harmed by entering into the Subcontract and Payment Agreement with [Defendant] because [Defendant] had no intention of ensuring [Plaintiff] would be adequately compensated for its work at the Project and lured [Plaintiff] into the Subcontract and Payment

> Agreement at a reduced rate so [Defendant] could secure the bid and profit from the Prime Contract at the expense of [Plaintiff's] efforts.

Compl. ¶¶ 34–35, 46, 55, 69, 74 (emphases added).

While Defendant acknowledges that some claims arguably fall within the Payment Agreement, it argues for the first time in reply that (1) those claims are legally void, or (2) should be severed. Local Rule of Practice for the District of Hawaii ("Local Rule") 7.4 states, "A reply must respond only to arguments raised in the opposition. Any argument raised for the first time in the reply shall be disregarded." Local Rule 7.4. The Court therefore refuses to consider Defendant's argument that the claims are legally void, as it is not responsive to Plaintiff's Opposition.[1]

To the extent Defendant's request to sever responds to Plaintiff's Opposition, the Court denies the request. *See Duarte v. California Hotel & Casino*, No. CIV 08-00185 JMS LEK, 2009 WL 4668739, at *5 (D. Haw. Dec. 4, 2009) ("Courts often find that the interests of justice warrant transfer of an entire action as opposed to splitting the action between two different venues."); *see also*

---

[1] Defendant claims it did not know the Payment Agreement existed until after it filed the Motion. Defendant did, however, have notice of the Payment Agreement by June 3, 2019, if not earlier. ECF No. 26-6. Once aware that the Motion might contain factual errors or problematic arguments, Defendant could have withdrawn or modified the Motion to include the arguments it chose to raise in the reply, thereby allowing Plaintiff an opportunity to respond. In any event, notwithstanding these discovery disputes, the Complaint clearly indicates that the parties entered into a signed Payment Agreement. Compl. ¶ 6.

*Valvanis v. Milgroom*, No. 06-00144 JMS KSC, 2008 WL 1780306, at *7 (D. Haw. Apr. 10, 2008). In addition, severing the claims would not serve Defendant's purpose because the claims arising out of the Subcontract are properly in the District of Hawaii.

### 2. Claims Arising under the Subcontract

Defendant persuasively argues: (1) the Subcontract does not contain a mandatory forum-selection clause, and therefore the *Atlantic Marine* factors do not apply; (2) the forum-selection clause in the Prime Contract is not incorporated into the Subcontract; and (3) the Payment Agreement does not supersede the Subcontract. Nonetheless, the Court finds the *Jones* factors weigh in favor of retaining the case in the District of Hawaii.

Considering the first factor—where the relevant agreements were negotiated and executed—the contracts were negotiated in Honolulu, Hawaiʻi; American Samoa; West Linn, Oregon; and Martinez, California. Declaration ("Decl.") of David Cavagnol; Decl. of Cindy Liu ¶¶ 4–6; Decl. of Brian Wetzsteon ¶ 2–3; Decl. of Rowan Tucker ¶¶ 2–3. Importantly, the contracts were executed, at least in part, in Hawaiʻi. Cavagnol Decl. ¶ 3. This factor does not favor either the District of Hawaii nor the Northern District of California.

The second factor—the state that is most familiar with the governing law—favors the Northern District of California. California law will likely govern claims

arising under the Subcontract.

The third factor—Plaintiff's choice of forum—favors the District of Hawaii. Defendant argues that the Court should not defer to Plaintiff's choice of forum because Plaintiff does not reside in Hawai'i, but this argument ignores the fact that American Samoa is not within any district. *See United States v. Lee*, 472 F.3d 638, 645 (9th Cir. 2006).

The fourth factor—the respective parties' contacts with the forum—favors the District of Hawaii. Defendant has contacts with Hawai'i and California, Compl. at ¶ 8, and even maintains an office in Hawai'i, Decl. of Laura Moritz ¶ 2, while Plaintiff has limited contacts with California, if any. *See* Decl. of Tony Togia'i ¶ 3.

The fifth factor—contacts related to the cause of action in the chosen forum—is neutral. The Subcontract was executed in part in Hawai'i, Cavagnol Decl. ¶ 4, and the Project took place in American Samoa, Compl. ¶ 1.

The sixth factor—the differences in the costs of litigation—favors retaining this case in the District of Hawaii. If litigation takes place in California, fifteen of Plaintiff's witnesses will have to fly from American Samoa to California. Togia'i Decl. ¶ 4. If litigation occurs in Hawai'i, witnesses from California, Oregon, Utah, Idaho, and American Samoa may need to fly to Hawai'i. Decl. of Brian Schnarr ¶ 3. While of course it would be more convenient for Defendant if the case were

heard in the Northern District of California, it only makes sense that the case remain in the District of Hawaii, which is essentially equally convenient (for geographic and other reasons) for both parties. For similar reasons, factors seven and eight—the availability of compulsory attendance and ease of access to sources of proof—also favor maintaining this case in the District of Hawaii.

Based on the foregoing, Defendant's Motion to Transfer is DENIED.

### iv. Motion to Dismiss Counts II and III

Defendant argues that Counts II and III should be dismissed because (1) Plaintiff fails to meet the specificity requirements of FRCP 9 and (2) the claims are barred by the economic loss rule. In its Motion, Defendant applies California law but fails to explain why the fraud and negligent misrepresentation claims are governed by California law.

The Court asked for supplemental briefing on the choice of law question. In Defendant's supplemental brief, Defendant argues that there is no conflict of law because under California and American Samoa law, the economic loss doctrine bars Plaintiff's fraud and negligent misrepresentation claims. Plaintiff contends that American Samoa law applies to the claims and that American Samoa law does not support Defendant's application of the economic loss rule.

The Court agrees with Defendant that it need not reach the choice of law question because California and American Samoa law are not in conflict on this

14

issue. Because there is no conflict of law, a choice of law analysis is unnecessary. *See Hamby v. Ohio Nat. Life Assur. Corp.*, Civ. No. 12-00122 JMS-KSC, 2012 WL 2568149, at *3 (D. Haw. June 29, 2012).

### 1. Fraudulent Misrepresentation

Defendant argues that the Court should dismiss Plaintiff's fraud and negligent misrepresentation claims because Plaintiff failed to meet the requirements of FRCP 9.

In Count II, Plaintiff alleges:

> 53. Before [Plaintiff] entered into the Subcontract and Payment Agreement, [Defendant's] principals (including Cynthia Liu, Brian Wetzseon, Goose Tucker, and others) made misrepresentations of material fact to [Plaintiff], including but not limited to: (a) the scope of the work was misrepresented and design details for the Project were not provided until after the bid closed, (b) [Plaintiff] would be timely paid by [Defendant], (c) [Plaintiff] would be timely paid by the Power Authority, and (d) safe and secure access to the Project site would be provided.
>
> 54. Before [Plaintiff] entered into the Subcontract and Payment Agreement, [Defendant's] principals made false promises and misrepresentations of material facts to [Plaintiff] (including, but not limited to, Tony Togiai) including, but not limited to, the following: [Defendant] refused to provide final design plans prior to preparing the bid and instead provided "initial" plans which greatly differed from the true scope of the Project.
>
> 55. [Defendant's] principals made the false promises and material misrepresentations to induce [Plaintiff] into entering into the Subcontract and Payment Agreement and to incur significant expense to build the retaining walls and tank foundations at the Project.

15

> 56. [Defendant's] principals made those promises and material representations to [Plaintiff] when [Defendant] and [Defendant's] principals knew, or should have known, those promises and representations to be false.
>
> 57. Those promises and representations were fraudulent, when made by [Defendant's] principals, and intended by [Defendant's] principals to induce or lure [Plaintiff] to enter into the Subcontract and Payment Agreement with [Defendant].

Compl. ¶¶ 53–57.

The Court finds that Plaintiff outlines fraud with the specificity required by FRCP 9. Plaintiff specifically alleges that Defendant's employees made misrepresentations about (1) the scope of the project and (2) Defendant's willingness to execute change orders with the Power Authority. *Id.*; *see HS W. Pac. Elec. Co. Corp. v. Dragados/Flatiron*, No. 118CV00166LJOBAM, 2018 WL 2088276, at *7 (E.D. Cal. May 4, 2018) (finding allegations that defendant withheld key information prior to execution of the subcontract were sufficient to state a fraud claim under FRCP 9). Accordingly, Defendant's Motion to Dismiss Count II is DENIED.

### 2. Negligent Misrepresentation

Defendant moves to dismiss Plaintiff's negligent misrepresentation claim "for the same reasons." Opp. at 28. This Court has declined to apply FRCP 9(b) to claims of negligent misrepresentation. *Maeda v. Pinnacle Foods Inc.*, No. CV 18-00459 JAO-RLP, 2019 WL 2078764, at *15 (D. Haw. May 10, 2019). Even if

Plaintiff's negligent misrepresentation claim was subject to the heightened pleading standards of FRCP 9(b), Plaintiff specifically alleges that Defendant lured Plaintiff into working at a reduced rate when Defendant knew or should have known that Plaintiff would incur significant expense. *Id.* ¶¶ 69, 74. Accordingly, Defendant's Motion is DENIED.

### 3. Economic Loss Doctrine

Under California or American Samoa law, the economic loss rule bars tort claims when a purchaser alleges injury only to a product itself, resulting in purely economic loss. *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986).[2] But Plaintiff states more than a claim for economic loss resulting from a breach of contract. Compl. ¶¶ 53–57, 67–69. Plaintiff alleges that Defendant made misrepresentations that convinced Plaintiff to render a bid and enter into the Subcontract and Payment Agreement. *Id.* These claims are separate from Plaintiff's claims that Defendant breached the agreements. This is true whether Plaintiff's claims are governed by California law or American Samoa tort law. Accordingly, the economic loss rule does not bar Counts II and III, and Defendant's Motion to Dismiss is DENIED.

---

[2] Defendant also argues that under California law, the economic loss doctrine only allows recovery in tort if the plaintiff and defendant have a "special relationship," but Defendant fails to cite analogous cases requiring a special relationship.

17

### v. Plaintiff's Request to Strike and Disregard

In its Opposition, Plaintiff asks the Court to strike and disregard Defendant's statement that Plaintiff's workers "armed with machetes took control of project materials and equipment." Opp. at 21. Defendant makes this statement without citing to factual evidence. *See* Memo in Supp. of Mot. at 3. Local Rule 7.6 states, "Factual contentions made in support of or in opposition to any motion shall be supported by affidavits or declarations, when appropriate under the applicable rules . . . . Affidavits and declarations not in compliance with this rule may be disregarded by the court." Local Rule 7.6. In accordance with Rule 7.6, the Court disregards the statement.

### III. CONCLUSION

For the reasons stated above, the Court DENIES Defendant's Motion.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, August 12, 2019.



  /s/  Jill A. Otake
Jill A. Otake
United States District Judge

Civil No. 19-00115 JAO-KJM; *Continental Transport Corporation v. Engineering Remediation Resources Group, Inc*.; ORDER DENYING DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO SECTION 1404(A), OR IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT